JUDGE FRANK MONTALVO

FILED

## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVETHOSON

2022 NOV -4  PM 2: 29

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ᴸᴬ
DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| | § |
| **v.** | § |
| | § |
| **ETHOS TECHNOLGIES INC.,** | § |
| **a/k/a ETHOS LIFE INSURANCE SERVICES,** | § |
| **a Delaware Corporation,** | § |
| | § |
| **Defendants.** | § |
| | § |

# EP22CV0412

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1.    The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the

Western District of Texas, and was present in Texas for all calls, in this case in El Paso County,

Texas.

2.    Defendant ETHOS TECHNOLOGIES INC. a/k/a ETHOS LIFE INSURANCE

SERVICES ("ETHOS") is a corporation organized and existing under the laws of Delaware and

can be served Corporation Service Company d/b/a CSC Lawyers Inc., 211 7th Street, Suite 620,

Austin, TX 78701.

## JURISDICTION AND VENUE

3.    **Jurisdiction.**  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendant's telemarketing to Plaintiff; adds little

complexity to the case.

4.     **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.     **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

6.     This Court has venue over the defendant because the calls at issue were sent by or on behalf of the above-named defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent

2

of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

4

## FACTUAL ALLEGATIONS

20.     Plaintiff's personal cell phone ending in 4604 has been registered on the National Do-Not-Call Registry since December 2007.

21.     Plaintiff's personal cell phone ending in 4374 has been registered on the National Do-Not Call Registry since January 2021.

22.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

23.     On March 25, 2022, Plaintiff began to receive a series of phone calls from phone number that began with 737-275-68XX to phone number ending in 4374. Plaintiff would answer the phone calls, but the calls would drop a few seconds into the call. Plaintiff received 33 phone calls over the period of 6 weeks.

24.     On April 12, 2022, Plaintiff began to receive a series of phone calls and text messages to phone number ending in 4374 from phone number 760-504-6315.

25.     On April 19, 2022, Plaintiff called phone number 760-504-6315 in order to find out who had been calling Plaintiff. Plaintiff was connected to Luke Goodman who identified himself as an insurance agent. Plaintiff did not inquire about Goodman's insurance services.

26.     On May 10, 2022, Plaintiff received a phone call from 737-275-6809 soliciting life insurance. Plaintiff was eventually connected to Luke Goodman who solicited Plaintiff for life insurance. The phone call eventually dropped before Plaintiff could purchase the policy.

27.     On May 10, 2022, Plaintiff received a phone call from phone number 602-935-1428. Plaintiff was connected to Kevin Kerman who answered the phone by saying, "This is Kevin

5

Kerman with America First Life. I am giving you a call because it looks like you spoke with one of our company's representatives."

28.     On the May 10, 2022, phone call, Plaintiff was able to complete the process and purchased a life insurance policy for the sole purpose of discovering who was behind the phone calls.

29.     On May 10, 2022, Plaintiff received an email that contained the insurance policy that Plaintiff purchased which revealed who was responsible for the calls and text messages.

30.     On May 10, 2022, Plaintiff called each and every phone number beginning with 737-275-68XX. None of the calls were answered indicating Defendant used spoofed phone numbers to make the solicitation calls.

31.     Defendant knowingly and willfully violates the TCPA because doing so benefits them financially when consumers purchase their life insurance policies.

32.     Plaintiff received at least six (6) calls and text messages to his personal cell phone ending in 4604 from Defendant.

33.     Plaintiff received at least thirty-five (35) calls and text messages to his personal cell phone ending in 4374 from Defendant within a two-month period.

34.     With information and belief Plaintiff has received more phone calls from or on behalf of Defendant within the past two years and the true number of calls will be revealed during discovery.

35.     Defendant ETHOS has previously been sued for violating the TCPA on actions *Lucine Trim v. Ethos Technologies, Inc.,* 2:21-CV-09857-JFW-PD and *Nichols v. Ethos Technologies Inc.,* 3:22-CV-05669-SK and continues to violate the law because doing so benefits them financially.

36.     Defendant ETHOS' illegal behavior, however, continues to allow them to sell life insurance policies because it benefits them financially.

6

37.     Plaintiff was bombarded and harassed at least forty-one (41) times Defendant soliciting life insurance policies.

38.     Plaintiff did not want or need a life insurance policy however he purchased the policy for the sole purpose of identifying the company responsible for the illegal robocalls.

39.     Plaintiff did not ask Defendant to call him regarding life insurance nor did Plaintiff ever inquire about life insurance in any way.

40.     Plaintiff did not seek Defendant's phone calls or services at any time before, during, or after the phone calls alleged in this Complaint.

41.     Table below displays the calls made to Plaintiff from or on behalf of Defendant to phone number ending in 4374.

TABLE A:  Calls to 4374

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 03/25/2022 | 12:21 PM | 737-275-6809 | 18 seconds |
| 2 | 03/25/2022 | 1:16 PM | 737-275-6809 | 7 seconds |
| 3 | 03/25/2022 | 2:21 PM | 737-275-6811 | Missed call |
| 4 | 03/25/2022 | 5:52 PM | 737-275-6807 | Missed call |
| 5 | 03/28/2022 | 9:47 AM | 737-275-6809 | 38 seconds |
| 6 | 03/29/2022 | 1:49 PM | 737-275-6813 | 7 seconds |
| 7 | 03/29/2022 | 1:49 PM | 737-275-6813 | 7 seconds |
| 8 | 03/30/2022 | 12:36 PM | 737-275-6811 | Missed call |
| 9 | 03/31/2022 | 3:45 PM | 737-275-6807 | 8 seconds |
| 10 | 04/06/2022 | 3:02 PM | 737-275-6812 | Missed call |
| 11 | 04/07/2022 | 1:12 PM | 737-275-6809 | 14 seconds |
| 12 | 04/08/2022 | 3:03 PM | 737-275-6809 | Missed call |

| 13 | 04/11/2022 | 1:58 PM | 737-275-6812 | 26 seconds |
| 14 | 04/12/2022 | 2:36 PM | 760-504-6315 | Missed call |
| 15 | 04/12/2022 | 2:37 PM | 760-504-6315 | Missed call |
| 16 | 04/13/2022 | 3:15 PM | 737-275-6812 | Missed call |
| 17 | 04/14/2022 | 11:38 AM | 737-275-6809 | 8 seconds |
| 18 | 04/15/2022 | 2:29 AM | 737-275-6812 | 8 seconds |
| 19 | 04/15/2022 | 1:55 PM | 737-275-6814 | 18 seconds |
| 20 | 04/19/2022 | 4:23 PM | 760-504-6315 | Missed call |
| 21 | 04/19/2022 | 9:18 PM | 760-504-6315 | Text message |
| 22 | 04/19/2022 | 9:18 PM | 760-504-6315 | Text message |
| 23 | 04/20/2022 | 2:08 PM | 737-275-6815 | Missed call |
| 24 | 04/21/2022 | 3:35 PM | 737-275-6815 | Missed call |
| 25 | 04/25/2022 | 6:47 PM | 760-504-6315 | Missed call |
| 26 | 04/26/2022 | 1:54 PM | 737-275-6816 | Missed call |
| 27 | 05/03/2022 | 2:29 PM | 760-504-6315 | 3 min 17 seconds |
| 28 | 05/04/2022 | 3:02 PM | 737-275-6812 | 12 seconds |
| 29 | 05/06/2022 | 4:05 PM | 737-275-6807 | Missed call |
| 30 | 05/07/2022 | 3:52 PM | 737-275-6809 | Missed call |
| 31 | 05/07/2022 | 11:33 AM | 737-275-6814 | Missed call |
| 32 | 05/09/2022 | 3:06 PM | 737-275-6809 | 11 seconds |
| 33 | 05/10/2022 | 4:13 PM | 737-275-6809 | 8 min 52 seconds |
| 34 | 05/10/2022 | 1:08 PM | 737-275-6815 | Missed call |
| 35 | 05/11/2022 | 2:16 PM | 737-275-6815 | 2 min 20 seconds |

42.     Table below displays the calls made to Plaintiff from or on behalf of Defendants to phone number ending in 4604.

TABLE B: Calls to 4604

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 04/20/2022 | 4:49 PM | 432-220-3681 | Declined call |
| 2 | 04/20/2022 | 4:50 PM | 432-220-3681 | Declined call |
| 3 | 04/20/2002 | 4:52 PM | 432-220-3681 | Text message |
| 4 | 04/21/2022 | 12:46 PM | 432-220-3681 | 1 min 27 seconds |
| 5 | 05/10/2022 | 5:34 PM | 602-935-1428 | Live call |
| 6 | 05/10/2022 | 6:00 PM | 303-547-0183 | Text message |

43.     Defendant initiated numerous unsolicited telemarketing telephone calls regarding life insurance.

44.     Defendant participated in, facilitated, directed, authorized, knew of, or willfully ignored the harassing calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketer calls.

45.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

46.     Plaintiff has limited data storage capacity on her cellular telephone. Incoming solicitation calls consumed part of this capacity.

47.     No emergency necessitated the calls.

48.      Defendant never sent Plaintiff any do-not-call policy.  Plaintiff sent an internal do-not-call

9

policy request to support@ethoslife.com on November 1, 2022, which is an email listed on the website they own and control https://ETHOSlife.com.

49.    On information and belief, Defendant did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

50.    On information and belief, Defendant did not train its agents on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

51.    Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

52.    Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

53.    Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

54.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## Plaintiff's cell phone is a residential number

55.    The calls were to Plaintiff's cellular phones ending in 4604 and 4374 which are Plaintiff's personal cell phones that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays

10

the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## VICARIOUS LIABILITY OF DEFENDANT

56.     Defendant is vicariously liable for the telemarketing calls that were made by their agents, Luke Goodman and Kevin Kerman, that promoted goods and services for the benefit of Ethos.

57.     The FCC is tasked with promulgating rules and orders related to the enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

58.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

59.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

60.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law

11

enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

61.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

62.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

63.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

64.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

65.     Defendant is legally responsible for ensuring that the affiliates that make telemarketing calls on its behalf comply with the TCPA when so doing.

66.     Defendant knowingly and actively accepted business that originated through illegal telemarketing.

12

67.     Defendant knew (or reasonably should have known) that its telemarketer was violating the TCPA on its behalf but failed to take effective steps within Defendant's power to force the telemarketer to cease that conduct.

68.     By hiring a company to make calls on its behalf, Defendant "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

69.     Moreover, Defendant maintained interim control over the actions of its agents.

70.     For example, Defendant had absolute control over whether, and under what circumstances, it would accept a customer from its agents.

71.     Furthermore, Defendant had day-to-day control over the actions of its agents, including the ability to prohibit them from using an ATDS or prerecorded messages to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

72.     Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

73.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

74.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

75.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an

13

agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

76.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

77.     Defendant is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant's agent solicited Plaintiff for a life insurance policy on behalf of Defendant.

## I.  FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

78.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

79.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

80.     Plaintiff was statutorily damaged at least forty-one (41) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

14

81.     Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

82.     As a result of Defendants' and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

83.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     The foregoing acts and omissions of Defendant Erus and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

> a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];
>
> b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

86.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

87.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for twelve (12) calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award to Plaintiff of damages, as allowed by law under the TCPA;

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

16

G.      An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as

allowed by law and equity

H.      Such further relief as the Court deems necessary, just, and proper.

November 4, 2022                          Respectfully submitted,

                                          Brandon Callier
                                          Plaintiff, Pro Se
                                          6336 Franklin Trail
                                          El Paso, TX 79912
                                          915-383-4604


## I.      **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 4, 2022

                                          Brandon Callier
                                          Plaintiff, Pro Se
                                          6336 Franklin Trail
                                          El Paso, TX 79912
                                          915-383-4604